IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Whaleco, Inc. | |
| | Case No. 1:24-cv-2050 |
| v. | |
| | Judge: Hon. |
| temuh.com, temumore.com, temu-shopping.com, riseapk.net, freeappmods.com, starfiles.co, and apkcast.com. | Magistrate: Hon. |
| | **JURY DEMAND** |

**COMPLAINT**

Plaintiff Whaleco, Inc. (d/b/a "Temu"), hereby files this Complaint for, *inter alia*, violations of the Anti-Cybersquatting Consumer Protection Act, and trademark infringement. On personal knowledge as to Plaintiff's own activities and on information and belief as to the activities of others:

**The Parties**

1. Whaleco, Inc. is a Delaware corporation, and a wholly owned subsidiary of PDD Holdings Inc., a publicly traded company (NASDAQ: PDD) with a market capitalization in excess of $100 billion.

2. "temuh.com" is an Internet domain name registered on March 2, 2023 through domain name registrar Squarespace Domains II LLC, utilizing a privacy service utilizing that shields the identity of the true registrant.

3. "temumore.com" is an Internet domain name registered on November 12, 2023 through domain name registrar TUCOWS, Inc., utilizing a privacy service utilizing that shields the identity of the true registrant.

4. "temu-shopping.com" is an Internet domain name registered on January 16, 2024 through domain name registrar CloudFlare, Inc., utilizing a privacy service utilizing that shields the identity of the true registrant.

5. "riseapk.net" is a website offering an unauthorized Temu "app" at the URL "riseapk.net/temu/" which is registered through the domain name registrar NameCheap, Inc., utilizing a privacy service that shields the identity of the true registrant. The true names and capacities of this defendant is currently unknown, and, as such, the defendant is identified by the domain name itself.

6. "freeappmods.com" is a website offering an unauthorized Temu "app" at the URL "freeappmods.com/second.php?id=181" which is registered through the domain name registrar NameCheap, Inc., utilizing a privacy service that shields the identity of the true registrant. The true names and capacities of this defendant is currently unknown, and, as such, the defendant is identified by the domain name itself.

7. "starfiles.co" is a website offering an unauthorized Temu "app" at the URL "starfiles.co/bundle_id/com.einnovation.temu" which is registered through the domain name registrar Sav.com LLC, utilizing a privacy service that shields the identity of the true registrant. The true names and capacities of this defendant is currently unknown, and, as such, the defendant is identified by the domain name itself.

8. "apkcast.com" is a website offering an unauthorized Temu "app" at the URL "apkcast.com/temu-mod-apk/file/" which is registered through the domain name registrar

Squarespace Domains II LLC, utilizing a privacy service that shields the identity of the true registrant. The true names and capacities of this defendant is currently unknown, and, as such, the defendant is identified by the domain name itself.

**Jurisdiction and Venue**

9. This is an action for trademark infringement, unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), and for unlawful and deceptive acts and practices under the laws of the State of Illinois.

10. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b); and 15 U.S.C. § 1125.

11. This Court has personal jurisdiction over Defendants in that they transact business in the State of Illinois and in the Northern District of Illinois.

12. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 in that the Defendants are entities or individuals subject to personal jurisdiction in this District. Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants directly target business activities towards consumers in the State of Illinois.

**Background Facts**

13. Whaleco Inc. operates an ecommerce platform called TEMU at temu.com ("TEMU.COM" or the "Platform"). The Platform is also accessible via the Temu app, which can be downloaded on both the Apple App Store and the Google Play Store.

14. The Platform has operated in the United States since September 1, 2022. Consumers in the United States can purchase goods on the Platform from third party sellers in many categories, including clothing, consumer goods, cosmetics, appliances and electronics.

15. TEMU.COM is a closed-loop online marketplace that connects consumers with sellers, manufacturers and brands around the world. The Platform is committed to offering the most affordable quality products to enable consumers and sellers in an inclusive environment. To keep the Platform a safe and secure shopping environment for consumers, Plaintiff and its affiliates also provide trust and safety services to curate sellers, and risk control and data security services to protect consumers' personal and payment information.

16. Plaintiff, through its affiliate, Five Bells Limited, is the exclusive licensee of all rights, title, and interest in and to, *inter alia*, the TEMU word marks and TEMU design marks (collectively, the "TEMU Marks") identified in the below chart.

| Mark | Registration No. | Products/Services |
|---|---|---|
| [TEMU logo] | 7,145,476 | Provision of an online marketplace for buyers and sellers of goods and services in Class 35. |
| **TEMU** | 7157165 | Various downloadable software for online shopping in Class 9. |
| [TEMU logo] | 7,157,220 | Various downloadable software for online Shopping in Class 9. |
| **TEMU** | 7164306 | Provision of an online marketplace for buyers and sellers of goods and services in Class 35. |

17. The registrations are valid, subsisting, unrevoked, and uncancelled pursuant to 15 U.S.C. § 1065. The registrations for the TEMU Marks constitutes prima facie evidence of validity and of Plaintiff's exclusive right to use the TEMU Marks pursuant to 15 U.S.C. § 1057(b). Genuine and authentic copies of the U.S. federal trademark registration certificates for the TEMU Marks are attached as **Exhibit 1**.

5

18. The TEMU Platform has enjoyed tremendous success in the U.S. market. Today, more than one year after its launch, the TEMU app has surpassed 100 million downloads on the Google Play Store alone and has been one of the most downloaded free applications in both the Google Play Store and the Apple App Store.

19. Plaintiff maintains quality control standards for all TEMU sites and applications. The Temu app is available for download through verified app stores, such as the Apple App Store and Google Play. A printout of the Temu site is attached as **Exhibit 2.**

20. The TEMU Marks have been widely promoted throughout the globe including within the United States. Consumers, potential consumers, and other members of the public not only associate Plaintiff's marketplace with exceptional quality, style, and affordable prices, but also recognize Plaintiff's marketplace in the United States originates exclusively with Plaintiff.

21. The TEMU Marks have never been assigned or licensed to any of the Defendants in this matter.

22. The TEMU Marks are a symbol of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

23. Further, Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the TEMU Marks by working with key influencers and content creators, advertising on social media, and purchasing commercial ad spots, including its 2023 and 2024 "Shop Like a Billionaire" Super Bowl ads, which have been viewed over 1 billion times.

24. Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's rights in the TEMU Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

25. In or around February and March 2024, Plaintiff identified the TEMU Marks being used in connection with the Domain names and applications identified in Paragraphs 2-8 (collectively the "Infringing Domains"). Defendants reproduced, displayed, and/or distributed the TEMU Marks without authorization or license from Plaintiff.

26. Defendants' use of the TEMU Marks on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the counterfeit websites, applications or unauthorized coupons and promotions is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

27. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the TEMU Marks in connection with the advertisement, offer for download, unauthorized applications and products, through, *inter alia*, the Internet. The Infringing Domains featuring application downloads are not authentic Temu applications or websites. Plaintiff did not develop, inspect, or publish the websites or their applications, and did not approve them for distribution. Each Infringing Domain offers services to the United States, including Illinois, and, on information and belief, each Defendant has completed downloads or offers into the United States, including Illinois.

28. Defendants go to great lengths to conceal their true identities, registering domain names using privacy shields, and failing to publish contact information on their websites.

29. The Defendants owning and/or operating the Infringing Domains have used the TEMU Marks in their domain names or applications without authorization, to create a false

association with Temu and deceive consumers. Copies of the Infringing Domains are attached as **Exhibit 3**.

30. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of creating counterfeit websites or applications that infringe upon the TEMU Marks unless preliminarily and permanently enjoined.

31. Plaintiff has no adequate remedy at law.

## COUNT ONE
## ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT VIOLATION
## (15 U.S.C. §1125(d))

32. Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

33. The registrants of the Infringing Domains identified in paragraphs 2-4 have registered, trafficked in, and/or used domain names that are identical and confusingly similar to the TEMU Marks, which were distinctive at the time the registrants registered them in violation of the ACPA.

34. The registrants of the Infringing Domains identified in paragraphs 2-4 have a bad faith intent to profit from the TEMU Marks because the registrants have no legal right to use the Infringing Domains, which are being used to divert consumers from Plaintiff's legitimate website for the purpose of commercial gain.

35. Under the ACPA, Plaintiff is entitled to an order requiring the domain name registrar to transfer the Infringing Domains identified in paragraphs 2-4 to Plaintiff's registrar of choice.

36. As a direct and proximate result of the wrongful conduct described in this Complaint, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

37. Plaintiff has been required to retain the services of an attorney to pursue its claims and is entitled to reasonable attorneys' fees and costs incurred in the prosecution of this action.

## COUNT TWO
## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
## (15 U.S.C. §1114)

38. Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

39. Plaintiff's TEMU Marks and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value to Plaintiff. The TEMU Marks are highly distinctive and have become universally associated in the public mind with Plaintiff's Temu marketplace and related services. Consumers associate Plaintiff's TEMU Marks with Plaintiff, its Temu platform and Temu brand.

40. Without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well-known and prior rights in the TEMU Marks, and the fact that Defendants' websites and applications are marketed and offered using marks which are identical or confusingly similar to Plaintiff's TEMU Marks, Defendants have developed, distributed, offered for sale, and/or offered services to the consuming public in direct competition with Plaintiff's offer of genuine Temu product or services under the TEMU Marks, in or affecting interstate commerce.

41. Defendants' use of infringing and counterfeit versions of Plaintiff's TEMU Marks in conjunction with Defendants' unauthorized services or products is likely to cause and is causing confusion, mistake, and deception among the general purchasing public as to the origin of the services or products and is likely to deceive the public into believing the unauthorized services or products as being offered by Defendants originate from, are

9

associated with, or are otherwise authorized by Plaintiff, causing damage to Plaintiff's reputation, goodwill, and sales.

42. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT THREE
### UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. §1125(a))

43. Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

44. The unauthorized services and products sold and/or offered for sale by Defendants are of the same nature and type as Plaintiff's marketplace and services offered for sale by Plaintiff and, as such, Defendants' use of the TEMU Marks is likely to cause confusion to the general purchasing public.

45. By misappropriating and using Plaintiff's TEMU Marks and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the services and products and create a likelihood of confusion by consumers as to the source of such services.

46. Defendants' unlawful, unauthorized, and unlicensed development, distribution, offer for sale, and/or sale of the unauthorized services and products creates express and implied misrepresentations that the services and products were created, authorized, or approved by Plaintiff, all to Defendants' profit and to Plaintiff's great damage and injury.

47. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of Plaintiff's TEMU Marks and trade names, in

connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

48. Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## Jury Demand

49. Plaintiff demands a jury trial on all claims so triable.

## Prayer for Relief

WHEREFORE, Plaintiff prays for judgment against Defendants in favor of Plaintiff on all counts as follows:

A. A judgment in favor of Plaintiff on all of the claims for relief pleaded herein;

B. An order requiring the domain registrars for the Infringing Domains, including but not limited to Squarespace Domains II LLC, TUCOWS, Inc., CloudFlare, Inc., NameCheap, Inc., and Sav.com LLC (collectively, the "Domain Registrars") to place the Infringing Domains on hold and lock them for the pendency of this litigation;

C. An order requiring the Domain Registrars to disable the name server information for the Infringing Domains so that they are no longer accessible to Internet users for the pendency of this litigation;

D. An order requiring any Content Delivery Networks ("CDN"), such as CloudFlare, as well as any Domain Hosting Company for the Infringing Domains to cease providing

infringing content and make the Infringing Domains inaccessible to Internet users for the pendency of this litigation;

E. An order requiring the current domain name registrar for the Infringing Domains to change the registrar of record for the Infringing Domains from the current domain name registrar to Plaintiff's registrar of choice;

F. An order, upon Plaintiff's request, that the owner and/or operator of the Infringing Domains identified in paragraphs 5-8 to:

    a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the offer of applications, products, or services on the Infringing Domains using the TEMU Marks;

    b. disable and cease displaying the applications identified in paragraphs 5-8, including any advertisements used by or associated with Defendants in connection with the offer of applications, products, or services using the TEMU Marks; and

    c. take all steps necessary to prevent links to the applications identified in paragraphs 5-8 from displaying in search results on the Infringing Domains, including, but not limited to, removing links from any search index.

G. An order that Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the TEMU Marks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any website, applications, or any domain names;

    b. engaging in any act of federal, state, or common law trademark infringement or unfair competition that would damage or injure Plaintiff; and

    c. encouraging, participating in or assisting in any of the above activities;

H. An order that the Defendants be required to account for and pay to Plaintiff all gains, profits, and advantages derived from their acts of infringement and other unlawful conduct, as alleged herein;

I. That judgment be entered against Defendants for Plaintiff's actual damages as a result of Defendants' act of infringement and other unlawful conduct alleged herein;

J. In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the TEMU Marks;

K. An order that Plaintiff be awarded maximum statutory damages for violations of the Anti-Cybersquatting provisions of the Lanham Act in an amount not less than $100,000 for each of the Infringing Domains;

L. That Plaintiff be awarded reasonable attorneys' fees and costs; and

M. That Plaintiff be granted such other and further relief as the court deems just and proper.

Respectfully submitted,

By:    s/David Gulbransen/
David Gulbransen
Attorney of Record

David Gulbransen (#6296646)
Law Office of David Gulbransen
805 Lake Street, Suite 172
Oak Park, IL 60302
(312) 361-0825 p.
(312) 873-4377 f.
david@gulbransenlaw.com

14