# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TRUE RELIGION APPAREL, INC. and GURU DENIM, INC., | ) ) ) | Case No. 12-cv-9894 |
| Plaintiffs, | ) ) | |
| v. | ) ) | **Judge Sharon Johnson Coleman** **Magistrate Judge Sidney I.** |
| DOES 1-100 d/b/a the aliases identified on Schedule "A", | ) ) ) | **Schenkier** |
| Defendants. | ) ) ) ) | |

### ORDER

THIS CAUSE being before the Court on Plaintiffs True Religion Apparel, Inc. and Guru Denim, Inc.'s (together, "True Religion") Motion for Entry of a Preliminary Injunction, and this Court having heard the evidence before it hereby GRANTS Plaintiffs' Motion for Entry of a Preliminary Injunction in its entirety against the Defendants listed in Schedule A to True Religion's Complaint (collectively, the "Defendants") and orders that:

1. Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be preliminarily enjoined and restrained from:

   a. using True Religion's TRUE RELIGION Trademarks or any reproduction, counterfeit copy or colorable imitation thereof in any manner in connection with the distribution, advertising, offering for sale, or sale of any product that is not a genuine True Religion product or not authorized by True Religion to be sold in connection with True Religion's TRUE RELIGION Trademarks;

1

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine True Religion product or any other product produced by True Religion, that is not True Religion's or not produced under the authorization, control or supervision of True Religion and approved by True Religion for sale under True Religion's TRUE RELIGION Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of True Religion, or are sponsored or approved by, or connected with True Religion;

d. further infringing True Religion's TRUE RELIGION Trademarks and damaging True Religion's goodwill;

e. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for True Religion, nor authorized by True Religion to be sold or offered for sale, and which bear any of True Religion's TRUE RELIGION Trademarks or any reproduction, counterfeit copy or colorable imitation thereof;

f. using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Domain Names or any other domain name that is being used to sell counterfeit True Religion products; and

g. operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, advertising, offering for sale, or sale of any products which bear any of

True Religion's TRUE RELIGION Trademarks or any reproduction, counterfeit copy or colorable imitation thereof.

2. The domain name registries for the Defendant Domain Names, namely, VeriSign, Inc., Neustar, Inc., Afilias Limited and the Public Interest Registry, within five (5) business days of receipt of this Order, shall unlock and change the registrar of record for the Defendant Domain Names to MarkMonitor or a registrar of True Religion's selection until further ordered by this Court, and the domain name registrars shall take any steps necessary to transfer the Defendant Domain Names to MarkMonitor or a registrar of True Religion's selection until further ordered by this Court.

3. Those in privity with Defendants and those with notice of the injunction of paragraph 1 hereto, including any online marketplace such as iOffer, Internet search engines, web hosts, domain name registrars and domain name registries that are provided with notice of the injunction, shall cease facilitating access to any and all websites and accounts through which Defendants engage in the sale of counterfeit and infringing goods using the TRUE RELIGION Trademarks.

4. Discovery herein by True Religion may continue by providing actual notice, pursuant to subpoena, e-mail or otherwise, of this Order to any of the following:

   a. Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them;

   b. any banks, savings and loan associations, payment processors or other financial institutions including, without limitation, PayPal or other merchant account providers, payment providers, third party processors, credit card associations (e.g.,

MasterCard and VISA), which receive payments or hold assets on Defendants' behalf; or

c.  any third party service providers including, without limitation, online B2B selling platforms, including iOffer, Internet service providers, back-end service providers, web designers, sponsored search engine or ad-word providers, shippers, domain name registrars and domain name registries who have provided services for Defendants.

5.  Any third party providing services for any of the Defendants, or in connection with any of Defendants' websites at the Defendant Domain Names or other websites operated by Defendants, including, without limitation, Internet Service Providers ("ISPs"), back-end service providers, web designers, sponsored search engine or ad-word providers, banks, merchant account providers including PayPal, third party processors and other payment processing services, shippers, domain name registrars and domain name registries (collectively, "Third Party Providers") shall, within five (5) business days after receipt of such notice, provide to True Religion copies of all documents and records in such person's or entity's possession or control relating to:

a.  The identities and addresses of Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them and the locations and identities of Defendants' operations, including, without limitation, identifying information associated with Defendants' Websites, the Defendant Domain Names and financial accounts;

b.  Defendants' websites;

c.  The Defendant Domain Names or any domain name registered by Defendants; and

     d.  Any financial accounts owned or controlled by Defendants, including their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions including, without limitation, PayPal, Western Union, or other merchant account providers, payment providers, third party processors, and credit card associations (e.g., MasterCard and VISA).

6.    Defendants and any persons in active concert or participation with them shall be temporarily and preliminarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

7.    Any banks, savings and loan associations, payment processors, PayPal or other financial institutions, for any Defendant or any of Defendants' websites shall immediately:

     a.  Locate all accounts connected to Defendants, Defendants' Marketplace Accounts or Defendants' websites, including, but not limited to, any PayPal accounts connected to the email addresses listed in Schedule B hereto; and

     b.  Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

8.    Schedule A and Exhibits 5 and 6 attached to the Declaration of Deborah Greaves are unsealed and True Religion will file unsealed copies with the Court.

9.    True Religion will file an unsealed copy of this Order with the Court once any identified financial accounts are frozen pursuant to Paragraph 7 of this Order.

10. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two days' notice to True Religion or on shorter notice as set by this Court.

11. The $10,000 bond posted by True Religion shall remain with the Court until a Final disposition of this case or until this Preliminary Injunction is terminated.

DATED: January 15, 2013

Sharon Johnson Coleman
U.S. District Court Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| OAKLEY, INC., | ) | |
| | ) | |
| | ) | Case No. 12-cv-9864 |
| Plaintiff, | ) | |
| | ) | **Judge Robert M. Dow, Jr.** |
| v. | ) | |
| | ) | **Magistrate Judge Jeffrey Cole** |
| DOES 1-100 d/b/a the aliases identified on | ) | |
| Schedule "A", | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PRELIMINARY INJUNCTION ORDER**

THIS CAUSE being before the Court on Plaintiff Oakley, Inc.'s ("Oakley") Motion for Entry of a Preliminary Injunction, and this Court having heard the evidence before it hereby GRANTS Plaintiff's Motion for Entry of a Preliminary Injunction in its entirety against the Defendants listed in Schedule A to Oakley's Complaint (collectively, the "Defendants") and orders that:

1.  Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be preliminarily enjoined and restrained from:

    a.  using Oakley's OAKLEY Trademarks or any reproduction, counterfeit copy or colorable imitation thereof in any manner in connection with the distribution, advertising, offering for sale, or sale of any product that is not a genuine Oakley product or not authorized by Oakley to be sold in connection with Oakley's OAKLEY Trademarks;

1

b.  passing off, inducing, or enabling others to sell or pass off any product as a genuine Oakley product or any other product produced by Oakley, that is not Oakley's or not produced under the authorization, control or supervision of Oakley and approved by Oakley for sale under Oakley's OAKLEY Trademarks;

c.  committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Oakley, or are sponsored or approved by, or connected with Oakley;

d.  further infringing Oakley's OAKLEY Trademarks and damaging Oakley's goodwill;

e.  otherwise competing unfairly with Oakley in any manner;

f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Oakley, nor authorized by Oakley to be sold or offered for sale, and which bear any of Oakley's OAKLEY Trademarks or any reproduction, counterfeit copy or colorable imitation thereof;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Domain Names or any other domain name that is being used to sell counterfeit OAKLEY products; and

h.  operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, advertising, offering for sale, or sale of any products which bear any of Oakley's OAKLEY Trademarks or any reproduction, counterfeit copy or colorable imitation thereof.

2.      The domain name registries for the Defendant Domain Names, namely, VeriSign, Inc., Neustar, Inc., Afilias Limited and the Public Interest Registry, within five (5) business days of receipt of this Order, shall unlock and change the registrar of record for the Defendant Domain Names to MarkMonitor or a registrar of Oakley's selection until further ordered by this Court, and the domain name registrars shall take any steps necessary to transfer the Defendant Domain Names to MarkMonitor or a registrar of Oakley's selection until further ordered by this Court.

3.      Those in privity with Defendants and those with notice of the injunction of paragraph 1 hereto, including any online marketplace such as iOffer, Internet search engines, web hosts, domain name registrars and domain name registries that are provided with notice of the injunction, shall cease facilitating access to any and all websites and accounts through which Defendants engage in the sale of counterfeit and infringing goods using the OAKLEY Trademarks.

4.      Discovery herein by Oakley may continue by providing actual notice, pursuant to subpoena, e-mail or otherwise, of this Order to any of the following:

   a.   Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them;

   b.   any banks, savings and loan associations, payment processors or other financial institutions including, without limitation, PayPal or other merchant account providers, payment providers, third party processors, credit card associations (e.g., MasterCard and VISA), which receive payments or hold assets on Defendants' behalf; or

   c.   any third party service providers including, without limitation, online B2B selling platforms, including iOffer, Internet service providers, back-end service providers,

web designers, sponsored search engine or ad-word providers, shippers, domain name
registrars and domain name registries who have provided services for Defendants.

5.    Any third party providing services for any of the Defendants, or in connection with any
of Defendants' websites at the Defendant Domain Names or other websites operated by
Defendants, including, without limitation, Internet Service Providers ("ISPs"), back-end
service providers, web designers, sponsored search engine or ad-word providers, banks,
merchant account providers including PayPal, third party processors and other payment
processing services, shippers, domain name registrars and domain name registries
(collectively, "Third Party Providers") shall, within five (5) business days after receipt of
such notice, provide to Oakley copies of all documents and records in such person's or
entity's possession or control relating to:

a.    The identities and addresses of Defendants, their agents, servants, employees,
confederates, attorneys, and any persons acting in concert or participation with them
and the locations and identities of Defendants' operations, including, without
limitation, identifying information associated with Defendants' Websites, the
Defendant Domain Names and financial accounts;

b.    Defendants' websites;

c.    The Defendant Domain Names or any domain name registered by Defendants; and

d.    Any financial accounts owned or controlled by Defendants, including their agents,
servants, employees, confederates, attorneys, and any persons acting in concert or
participation with them, including such accounts residing with or under the control of
any banks, savings and loan associations, payment processors or other financial
institutions including, without limitation, PayPal, Western Union, or other merchant

4

account providers, payment providers, third party processors, and credit card associations (e.g., MasterCard and VISA).

6.      Defendants and any persons in active concert or participation with them shall be temporarily and preliminarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

7.      Any banks, savings and loan associations, payment processors or other financial institutions including, without limitation, PayPal, for any Defendant or any of Defendants' websites, shall immediately locate all accounts connected to Defendants or Defendants' websites, and such accounts shall be temporarily and preliminarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

8.      Schedule A and Exhibits 1 and 2 attached to the Declaration of Adrian Punderson are unsealed.

9.      Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two days' notice to Oakley or on shorter notice as set by this Court.

10.      The $10,000 bond posted by Oakley shall remain with the Court until a Final disposition of this case or until this Preliminary Injunction is terminated.

DATED December 27, 2012

_____
U.S. District Court Judge James B. Zagel

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| COACH, INC. and COACH SERVICES, INC. | ) | |
| | ) | Case No. 1:12-cv-8963 |
| Plaintiffs, | ) | |
| | ) | **Judge Elaine E. Bucklo** |
| v. | ) | |
| | ) | **Magistrate Judge Michael T. Mason** |
| LIN FENG, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

THIS CAUSE being before the Court on Plaintiffs Coach, Inc. and Coach Services, Inc.'s (collectively, "Plaintiffs" or "Coach") Motion for Entry of a Preliminary Injunction, and this Court having heard the evidence before it hereby GRANTS Plaintiffs' Motion for Entry of a Preliminary Injunction in its entirety against the Defendants listed in Schedule A to Coach's Amended Complaint (collectively, the "Defendants") and orders that:

1.  Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be preliminarily enjoined and restrained from:

    a.  using Coach's COACH Trademarks or any reproduction, counterfeit copy or colorable imitation thereof in any manner in connection with the distribution, advertising, offering for sale, or sale of any product that is not a genuine Coach product or not authorized by Coach to be sold in connection with Coach's COACH Trademarks;

b.  passing off, inducing, or enabling others to sell or pass off any product as a genuine Coach product or any other product produced by Coach, that is not Coach's or not produced under the authorization, control or supervision of Coach and approved by Coach for sale under Coach's COACH Trademarks;

c.  committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Coach, or are sponsored or approved by, or connected with Coach;

d.  further infringing Coach's COACH Trademarks and damaging Coach's goodwill;

e.  otherwise competing unfairly with Coach in any manner;

f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Coach, nor authorized by Coach to be sold or offered for sale, and which bear any of Coach's COACH Trademarks or any reproduction, counterfeit copy or colorable imitation thereof;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Domain Names or any other domain name that is being used to sell counterfeit Coach products; and

h.  operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, advertising, offering for sale, or sale of any products which bear any of Coach's COACH Trademarks or any reproduction, counterfeit copy or colorable imitation thereof.

2.      The domain name registries for the Defendant Domain Names, namely VeriSign, Inc.,
Neustar, Inc., Afilias Limited and the Public Interest Registry, within five (5) business
days of receipt of this Order, shall unlock and change the registrar of record for the
Defendant Domain Names to MarkMonitor or a registrar of Coach's selection until
further ordered by this Court, and that the domain name registrars shall take any steps
necessary to transfer the Defendant Domain Names to MarkMonitor or a registrar of
Coach's selection until further ordered by this Court.

3.      Those in privity with Defendants and those with notice of the injunction of paragraph 1
hereto, including any online marketplace such as iOffer, Internet search engines, web
hosts, domain name registrars and domain name registries that are provided with notice
of the injunction, shall cease facilitating access to any and all websites and accounts
through which Defendants engage in the sale of counterfeit and infringing goods using
the COACH Trademarks.

4.      Discovery herein by Coach may continue by providing actual notice, pursuant to
subpoena, e-mail or otherwise, of this Order to any of the following:

a. Defendants, their agents, servants, employees, confederates, attorneys, and any
persons acting in concert or participation with them;

b. any banks, savings and loan associations, payment processors or other financial
institutions including, without limitation, PayPal or other merchant account
providers, payment providers, third party processors, credit card associations (e.g.,
MasterCard and VISA), which receive payments or hold assets on Defendants'
behalf; or

3

    c. any third party service providers including, without limitation, online B2B selling platforms, including iOffer, Internet service providers, back-end service providers, web designers, sponsored search engine or ad-word providers, shippers, domain name registrars and domain name registries who have provided services for Defendants.

5.    Any third party providing services for any of the Defendants, or in connection with any of Defendants' websites at the Defendant Domain Names or other websites operated by Defendants, including, without limitation, Internet Service Providers ("ISPs"), back-end service providers, web designers, sponsored search engine or ad-word providers, banks, merchant account providers including PayPal, third party processors and other payment processing services, shippers, domain name registrars and domain name registries (collectively, "Third Party Providers") shall, within five (5) business days after receipt of such notice, provide to Coach copies of all documents and records in such person's or entity's possession or control relating to:

    a. The identities and addresses of Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them and the locations and identities of Defendants' operations, including, without limitation, identifying information associated with Defendants' Websites, the Defendant Domain Names and financial accounts;

    b. Defendants' websites;

    c. The Defendant Domain Names or any domain name registered by Defendants; and

> d. Any financial accounts owned or controlled by Defendants, including their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions including, without limitation, PayPal, Western Union, or other merchant account providers, payment providers, third party processors, and credit card associations (e.g., MasterCard and VISA).

6. Defendants and any persons in active concert or participation with them shall be temporarily and preliminarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

7. Any banks, savings and loan associations, payment processors or other financial institutions including, without limitation, PayPal, for any Defendant or any of Defendants' websites, shall immediately locate all accounts connected to Defendants or Defendants' websites, and such accounts shall be temporarily and preliminarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

8. Schedule A and Exhibits 2 and 3 attached to the Declaration of Ethan Lau are unsealed.

9. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two days' notice to Coach or on shorter notice as set by this Court.

10. The $10,000 bond posted by Coach shall remain with the Court until a Final disposition of this case or until this Preliminary Injunction is terminated.

DATED November 29, 2012

*Elaine E. Bucklo*
_____

U.S. District Court Judge Elaine E. Bucklo

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MONSTER ENERGY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 CV 09142 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| ZHAO MIN, *et al.*, | ) | Magistrate Judge Michael T. Mason |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PRELIMINARY INJUNCTION ORDER**

This is the preliminary injunction order in this trademark infringement case. As previously described in the temporary restraining order issued earlier in the case, Plaintiff Monster Energy Company (MEC for short) owns trademarks that it alleges are being infringed by counterfeiters in overseas locations. Specifically, MEC alleges that the defendants offer to sell, and do sell, counterfeit MEC products by advertising the products (such as shirts and caps) on websites. None of the defendants (identified on Schedule A, which is attached) are authorized to use MEC's various trademarks (including the name Monster Energy itself), yet the defendants market the products under those trademarks. These facts are supported by the sworn declaration attached to the pending motion, as well as the declarations and many exhibits attached to the earlier motion for temporary restraining order.

The traditional factors that are considered in deciding whether to grant a preliminary injunction all point to issuing one here. MEC has a near-certainty likelihood of success on the merits, because MEC knows to whom it has—and has

not—authorized to use its marks. The MEC Trademarks (they are listed below) are distinctive marks and are registered with the United States Patent and Trademark Office, and none of the Defendants are licensed or authorized to use any of the marks. The use of the exact same marks will almost surely cause confusion as to the origin or sponsorship of Defendants' products with MEC. The same high-degree of likely success also applies to the Anticybersquatting Consumer Protection Act because MEC has demonstrated that Defendants have bad-faith intent to profit from the MEC Trademarks and have registered, trafficked in, or used domain names that are identical or confusingly similar to or dilutive of MEC's distinctive trademarks. Money damages are an inadequate substitute for the erosion of goodwill and brand confidence, and the irreparable injury arises from damage to MEC's reputation, loss of exclusivity, and loss of future sales. Moreover, the public interest is served by entry of this Preliminary Injunction to dispel the public confusion created by Defendants' actions.

According, the Court finds (at least without an adversarial presentation) that it has personal jurisdiction over the Defendants because the Defendants directly target their business activities toward consumers in the United States, including Illinois. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet stores through which Illinois residents can purchase products bearing counterfeit versions of the MONSTER ENERGY Trademarks (a list of which is included in the below chart)

and/or unauthorized copies of the Monster Energy Copyrighted Designs
(collectively, the "Unauthorized Monster Energy Products").

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 2,903,214 |  | Nov. 16, 2004 | For: Drinks, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not in class 032. |
| 3,057,061 | MONSTER ENERGY | Feb. 7, 2006 | For: fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not in class 032. |
| 3,134,841 |  | Aug. 29, 2006 | For: Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice |

3

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not in class 032. |
| 4,051,650 | | November 8, 2011 | For: Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely hats and beanies in class 025. |
| 3,963,669 | | May 17, 2011 | For: All-purpose sport bags; all-purpose carrying bags; backpacks; duffel bags in class 018. |
| 3,963,668 | | May 17, 2011 | For: Stickers; sticker kits comprising stickers and decals; decals; posters in class 016. |

4

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 3,923,683 |  | February 22, 2011 | For: All-purpose sport bags; all-purpose carrying bags; backpacks; duffle bags in class 018. |
| 3,908,601 |  | January 18, 2011 | For: Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies in class 025. |
| 3,908,600 |  | January 18, 2011 | For: Stickers; sticker kits comprising stickers and decals; decals in class 016. |
| 4,332,062 |  | May 7, 2013 | For: Silicone wrist bands; Silicone bracelets; Jewelry, namely, bracelets and wristbands in class 014. |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 4,011,301 |  | August 16, 2011 | For: Sports helmets; video recordings featuring sports, extreme sports, and motor sports in class 009. |
| 3,914,828 |  | February 1, 2011 | For: Sports helmets in class 009. |
| 4,660,598 |  | December 23, 2014 | For: Lanyards; Lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences in class 022. |

The Court further finds, as explained above, that injunctive relief previously granted in the TRO" should remain in place through the pendency of this litigation and that issuing this Preliminary Injunction is warranted under Federal Rule of Civil Procedure 65.

Accordingly, this Court orders that:

1. Defendants, their officers, agents, servants, employees, attorneys, and other persons acting in active concert or participation with them be preliminarily enjoined and restrained from:

    a. using the MONSTER ENERGY Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Monster Energy Product or not authorized by MEC to be sold in connection with the MONSTER ENERGY Trademarks;

    b. reproducing, distributing copies of, making derivative works of, or publicly displaying the Monster Energy Copyrighted Designs in any manner without the express authorization of MEC;

    c. passing off, inducing, or enabling others to sell or pass off any product as a genuine Monster Energy Product or any other product produced by MEC, that is not MEC's or not produced under the authorization, control or supervision of MEC and approved by MEC for sale under the MONSTER ENERGY Trademarks and/or the Monster Energy Copyrighted Designs;

    d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Monster Energy Products are those sold under the authorization, control or supervision of MEC, or are sponsored by, approved by, or otherwise connected with MEC;

e. further infringing the MONSTER ENERGY Trademarks and/or the Monster Energy Copyrighted Designs and damaging MEC's goodwill;

f. otherwise competing unfairly with MEC in any manner;

g. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for MEC, nor authorized by MEC to be sold or offered for sale, and which bear any MEC trademark, including the MONSTER ENERGY Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof and/or which bear the Monster Energy Copyrighted Designs;

h. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Unauthorized Monster Energy Products; and

i. operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the MONSTER ENERGY Trademarks or any reproductions, counterfeit copies or colorable imitations thereof and/or the Monster Energy Copyrighted Designs that is not a genuine Monster Energy Product or not authorized by MEC to be sold in connection with

the MONSTER ENERGY Trademarks and/or the Monster Energy Copyrighted Designs.

2. Each Defendant, within fourteen (14) days after receiving notice of this Order, shall serve upon MEC a written report under oath providing: (a) their true name and physical address, (b) all websites and online marketplace accounts on any platform that they own and/or operate (c) their financial accounts, including all PayPal accounts, and (d) the steps taken by each Defendant to comply with paragraph 1, a through i, above.

3. The domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, within three (3) business days of receipt of this Order, shall, at MEC's choosing:

   a. unlock and change the registrar of record for the Defendant Domain Names to a registrar of MEC's selection until further ordered by this Court, and the domain name registrars shall take any steps necessary to transfer the Defendant Domain Names to a registrar of MEC's selection until further ordered by this Court; or

   b. disable the Defendant Domain Names and make them inactive and untransferable until further ordered by this Court.

4. Those in privity with Defendants and with actual notice of this Order, including any online marketplaces such as iOffer and domain name registrars, shall within three (3) business days of receipt of this Order:

a. disable and cease providing services for any accounts through which Defendants, currently or in the future, engage in the sale of infringing goods using the MONSTER ENERGY Trademarks and/or copying the Monster Energy Copyrighted designs, including, but not limited to, any accounts associated with the Defendants listed on Schedule A; and

b. disable any account linked to Defendants, linked to any e-mail addresses used by Defendants, or linked to any Defendant Domain Names.

5.  Defendants and any third party with actual notice of this Order who is providing services for any of the Defendants, or in connection with any of Defendants' websites at the Defendant Domain Names or other websites operated by Defendants, including, without limitation, any online marketplace platforms such as iOffer, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and domain name registrars (collectively, the "Third Party Providers") shall, within five (5) business days after receipt of such notice, provide to MEC expedited discovery, including copies of all documents and records in such person's or entity's possession or control relating to:

a. The identities and locations of Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including all known contact information, including any and all associated e-mail addresses;

    b.  the nature of Defendants' operations and all associated sales, methods of payment for services and financial information, including, without limitation, identifying information associated with the Online Marketplace Accounts, the Defendant Domain Names, and Defendants' financial accounts, as well as providing a full accounting of Defendants' sales and listing history related to their respective Online Marketplace Accounts and Defendant Domain Names;

    c.  Defendants' websites and/or any Online Marketplace Accounts;

    d.  The Defendant Domain Names or any domain name registered by Defendants; and

    e.  Any financial accounts owned or controlled by Defendants, including their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions including, without limitation, PayPal, or other merchant account providers, payment providers, third party processors, and credit card associations (e.g., MasterCard and VISA).

6.    Defendants and any persons in active concert or participation with them who have actual notice of this Order shall be temporarily and preliminarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

7.  PayPal, Inc. ("PayPal") shall, within two (2) business days of receipt of this Order, for any Defendant or any of Defendants' Online Marketplace Accounts or websites:

    a.  locate all accounts and funds connected to Defendants, Defendants' Online Marketplace Accounts or Defendants' websites, including, but not limited to, any PayPal accounts connected to the information listed in Schedule A hereto, the e-mail addresses identified in Exhibits 3 and 4 to the Declaration of Bruce Kingsland, and any e-mail addresses provided for Defendants by third parties; and

    b.  restrain and enjoin any such accounts or funds that are China or Hong Kong based from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

8.  Any banks, savings and loan associations, payment processors, or other financial institutions, for any Defendant or any of Defendants' Online Marketplace Accounts or websites, shall within two (2) business days of receipt of this Order:

    a.  locate all accounts and funds connected to Defendants, Defendants' Online Marketplace Accounts or Defendants' websites, including, but not limited to, any accounts connected to the information listed in Schedule A hereto, the e-mail addresses identified in Exhibits 3 and 4 to the Declaration of Bruce Kingsland, and any e-mail addresses provided for Defendants by third parties; and

12

      b. restrain and enjoin any such accounts or funds from receiving, transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

9.    MEC may provide notice of these proceedings to Defendants, including service of process pursuant to Fed. R. Civ. P. 4(f)(3), by electronically publishing a link to the Amended Complaint, this Order and other relevant documents on a website to which the Defendant Domain Names which are transferred to MEC's control will redirect, or by sending an e-mail to the e-mail addresses identified in Exhibits 3 and 4 to the Declaration of Bruce Kingsland and any e-mail addresses provided for Defendants by third parties that includes a link to said website. The Clerk of Court is directed to issue a single original summons in the name of "Zhao Min and all other Defendants identified in the Amended Complaint" that shall apply to all Defendants. The combination of providing notice via electronic publication or e-mail, along with any notice that Defendants receive from domain name registrars and payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

10.    Plaintiff's Amended Complaint, Schedule A to the Amended Complaint, Exhibits 3 and 4 to the Declaration of Bruce Kingsland, and the TRO are unsealed.

11.   Any Defendants that are subject to this Order may appear and move to
dissolve or modify the Order on two days' notice to MEC or on shorter notice
as set by this Court.

12.   The $10,000 bond posted by MEC shall remain with the Court until a Final
disposition of this case or until this Preliminary Injunction is terminated.

ENTERED:


          s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE issued: November 5, 2015
DATE entered: November 6, 2015

14